IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-00103-01-CR-W-GAF |
| | ) | |
| SENECA HARRISON, | ) | |
| | ) | |
| Defendant. | ) | |

<u>REPORT AND RECOMMENDATION</u>

This matter is currently before the Court on defendant Seneca Harrison's Motion to Suppress Evidence (doc #19). For the reasons set forth below, it is recommended that this motion be denied.

I. <u>BACKGROUND</u>

On April 10, 2018, a criminal complaint was filed charging defendant Seneca Harrison with being a felon in possession of a firearm.

On May 1, 2018, the Grand Jury returned a one-count indictment against defendant Harrison. The indictment charges that on April 9, 2018, defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, a firearm, to wit: a Maverick by Mossberg, Model 88, 12 gauge shotgun, with an obliterated serial number.

An evidentiary hearing on the motion to suppress was held on August 9, 2018. Defendant Harrison was represented by Assistant Federal Public Defender Robert G. Kuchar. The Government was represented by Assistant United States Attorney Matthew A. Moeder. The

Government called Officer Nicholas M. Goettling of the Blue Springs, Missouri Police Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On April 9, 2018, at approximately 1:00 a.m., Officer Nicholas Goettling was in the area of Southwest 40 Highway and Southwest Woods Chapel Road in Blue Springs, Missouri, when he observed a silver GMC SUV heading eastbound on 40 Highway. (Tr. at 5) The vehicle's loud exhaust as it approached the intersection drew Officer Goettling's attention. (Tr. at 8) Officer Goettling testified that the exhaust was either defective or manipulated in some manner. (Tr. at 9) Officer Goettling further testified that it is against city ordinances in Blue Springs to have a loud exhaust that is not in working order. (Tr. at 9) Based on his observation, training and experience, Officer Goettling believed that this vehicle was in violation of city ordinance based on the exhaust. (Tr. at 9) When the traffic light turned green, the vehicle quickly accelerated through the intersection to the next green traffic signal and then continued eastbound on 40 Highway. (Tr. at 9)

2. Officer Goettling testified that it is his patrol function to look for and investigate impaired drivers. (Tr. at 9) Officer Goettling followed the vehicle eastbound on 40 Highway. (Tr. at 10) Officer Goettling was not able to determine the vehicle's speed by radar because he has an approaching radar unit which only gets the speed of vehicles that are approaching him, rather than vehicles he is following. (Tr. at 11) Officer Goettling was also unable to utilize the pace method where he would attempt to match the vehicle's speed because of the short distance travelled. (Tr. at 11-12) However, Officer Goettling testified that while driving at 45 miles per hour, the posted speed limit, the silver GMC SUV was pulling away from him. (Tr. at 10) Based on this observation, Officer Goettling believed that the driver of the silver GMC SUV was speeding. (Tr. at 10-11) Officer Goettling estimated that the vehicle was traveling at approximately 55 miles per hour. (Tr. at 11) Officer Goettling testified that it is a violation of city ordinance and state statute to exceed the speed limit. (Tr. at 12)

3. At the intersection of 7 Highway and 40 Highway, the vehicle came to a stop and then turned right to travel southbound on 7 Highway. (Tr. at 12) At the intersection of 7 Highway and Keystone Drive, Officer Goettling observed the vehicle come to a complete stop at a red traffic signal. (Tr. at 13) When the signal turned green, Officer Goettling heard the vehicle's tires squeal as the vehicle rapidly accelerated. (Tr. at 13) Officer Goettling testified that as the vehicle continued southbound after the intersection, the vehicle's driver's side tires crossed

2

over the double yellow painted lane dividers. (Tr. at 13, 14-15) Officer Goettling testified that crossing over traffic lanes in this manner is a violation of Missouri statute. (Tr. at 15) Officer Goettling also observed that the vehicle's brake lights repeatedly came on while travelling southbound on 7 Highway. (Tr. at 16) This signified to Officer Goettling that the driver of the vehicle was speeding and then hitting the brakes and slowing down. (Tr. at 16) There were no other vehicles on the road to cause the driver of the vehicle to apply the brakes. (Tr. at 16)

4. None of Officer Goettling's observations were captured on his dash camera because the system only turns on if the officer manually presses the button or 30 seconds prior to the lights being activated. (Tr. at 16) Officer Goettling had not pressed the button due to his focusing on the vehicle that he was following and he had not activated his lights. (Tr. at 16) Officer Goettling followed the silver GMC SUV to the intersection of 7 Highway and Moreland School Road where the vehicle turned into an apartment complex. (Tr. at 17) As Officer Goettling was pulling into the apartment complex, he initiated his emergency equipment, which activated his dashcam. (Tr. at 17) Officer Goettling testified that he stopped the vehicle not only for the traffic violations he had observed, but also because he believed, based on the pattern of driving, that the individual driving may have been either intoxicated or impaired. (Tr. at 19)

5. The driver of the silver GMC SUV (later identified as Seneca Harrison) parked and got out of the vehicle. (Tr. at 18) Officer Goettling gave the driver verbal commands to get back into the vehicle. (Tr. at 18) Officer Goettling testified that generally, it is safer for everyone if the driver and any occupants stay inside the vehicle during traffic stops. (Tr. at 19) Officer Goettling was alone in his patrol car. (Tr. at 19) Defendant Harrison did not obey Officer Goettling's command to get back into the vehicle. (Tr. at 20) Instead, Harrison walked away from his vehicle and away from Officer Goettling. (Tr. at 20) Officer Goettling gave Harrison verbal commands to come back while Goettling was walking towards him. (Tr. at 20) Harrison was not compliant. (Tr. at 20)

6. Officer Goettling grabbed defendant Harrison's left arm in an escort manner to walk him back to his police vehicle. (Tr. at 21) Harrison was resistant and attempted to pull away from Officer Goettling. (Tr. at 21) Officer Goettling testified that he needed to take control of the situation for his own safety due to the location and because he did not know if anyone else was in the vehicle. (Tr. at 20) Officer Goettling testified that Harrison was detained at this point in time, but not under arrest. (Tr. at 20) Officer Goettling detected the odor of alcohol coming from Harrison. (Tr. at 21)

7. Ultimately, defendant Harrison was placed under arrest for careless driving and because he had a revoked driving status. (Tr. at 21)

3

8. Other officers arrived on the scene. (Tr. at 40) Officer Goettling was advised by Sergeant Claxton that there appeared to be a shotgun in plain view tucked between the driver's seat and the center console with a scratched-off serial number. (Tr. at 40)

9. Officer Goettling's investigation continued at the headquarters of the Blue Springs Police Department. (Tr. at 23) Officer Goettling testified that a standardized field sobriety test indicated that defendant Harrison was driving while intoxicated or impaired. (Tr. at 23) Harrison refused to consent to a breathalyzer. (Tr. at 23) A state search warrant was obtained to get samples of Harrison's blood. (Tr. at 23) The blood draw took place at St. Mary's Hospital in Blue Springs, Missouri. (Tr. at 23)

10. Three municipal citations were issued to defendant Harrison: careless driving, drug paraphernalia, and tampering with physical evidence. (Tr. at 23) On the citation for careless driving, Officer Goettling described the offense as "careless driving by exceeding the posted speed limit, quickly accelerating causing the tires to squeal and the vehicle to then cross the double yellow painted line." (Tr. at 25; Government's Ex. 3) Other charges submitted to the state prosecutor included: felon in possession of a firearm, felony driving while revoked, possession of a defaced firearm, and felony resisting. (Tr. at 24)

## III. DISCUSSION

Defendant Harrison seeks to suppress all evidence, and testimony related to such evidence, obtained as a result of an unlawful search[1] and seizure of defendant in violation of his rights under the Fourth Amendment. (Motion to Suppress Evidence (doc #19) at 1) Specifically, defendant argues that there was no lawful basis for the stop because his vehicle did not have a loud exhaust, he was not speeding, he did not squeal his tires, and he did not cross the center line while driving. (Id. at 3) Defendant argues that even if he crossed the center line and was speeding, he did not violate the careless driving ordinance; thus, Officer Goettling did not have a reasonable belief that criminal activity was afoot. (Id. at 5) Further, Officer Goettling's observation that defendant smelled of alcohol occurred after the stop was initiated so it cannot be used to find reasonable

---

[1] At the suppression hearing, defense counsel advised that defendant was challenging the stop, rather than the search, of the vehicle. (Tr. at 39)

4

suspicion for the stop. (Id. at 5-6) Finally, because Officer Goettling did not have reasonable suspicion to detain defendant Harrison or probable cause to arrest him, all evidence and statements obtained as a result of the stop must be suppressed as fruit of the poisonous tree. (Id. at 6)

A. The Stop

As the Eighth Circuit Court of Appeals has observed, "a traffic violation--however minor--creates probable cause to stop the driver of the vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000).

Prior to stopping defendant Harrison, Officer Goettling observed that Harrison was operating a vehicle with a loud exhaust, that Harrison was exceeding the posted speed limit, and that Harrison accelerated so quickly from a stop at a red traffic signal that he squealed his tires and crossed the double yellow painted line.[2] (Fact Nos. 1, 2, and 3) The City of Blue Springs, Missouri Traffic Code provides the following with respect to these violations:

Mufflers Required.

… no vehicle shall be driven in such manner or condition that excessive and unnecessary noises shall be made by its machinery, [or] motor …. The motors of all motor vehicles shall be fitted with properly attached mufflers of such capacity or construction as to quiet the maximum possible exhaust noise as completely as is done in modern gas engine passenger motor vehicles. …

Section 385.010.

State Speed Law Applicable.

The State traffic laws regulating the speed of vehicles shall be applicable upon all streets within the City, except that the City may by ordinance declare and determine

---

[2]In his motion, defendant Harrison argues that he was not carelessly driving, his vehicle did not have a loud exhaust, he was not speeding, he did not squeal his tires, and he did not cross the center line while driving. (Motion to Suppress Evidence (doc #19) at 3) The Court credits Officer Goettling's testimony regarding his observations of defendant Harrison's driving.

5

upon the basis of engineering and traffic investigation that certain speed regulations shall be applicable upon specified streets or in certain areas, in which event it shall be unlawful for any person to drive a vehicle at a speed in excess of any speed so declared when signs are in place giving notice thereof ….

Section 320.010.

Traffic Lanes.

Where … traffic lanes have been marked, it shall be unlawful for the operator of any vehicle to fail or refuse to keep such vehicle within the boundaries of any such lane except when lawfully passing another vehicle or prepartory to making a lawful turning movement.

Section 315.150(B).

Careless Driving.

Any person who operates a vehicle upon a street carelessly and heedlessly, in disregard of the rights or safety of others, or without due caution and circumspection, or at a speed and in a manner so as to endanger or be likely to endanger any person or property shall be guilty of careless driving.

Section 340.190(A).   Officer Goettling was authorized to stop defendant Harrison pursuant to any of these sections of the traffic code.

Defendant Harrison argues that Officer Goettling did not observe conduct that constituted careless driving because Goettling could not ascertain whether defendant was speeding because he could not pace defendant's vehicle.  (Motion to Suppress Evidence (doc #19) at 5)   Defendant cites the case of United States v. Sowards, 690 F.3d 583 (4th Cir. 2012), in support of his argument.  In Sowards, the court found that an officer lacked probable cause to initiate a traffic stop which was based exclusively on the officer's visual estimate that Sowards' vehicle was traveling 75 miles per hour ("mph") in a 70-mph zone.   Id. at 585.   In Sowards, the officer was positioned on the side of the highway and merely observed the vehicle coming towards him and then passing him before visually estimating that the vehicle was exceeding the legal speed limit by 5 mph.   Id. at

6

585-86. While the Sowards court found that the officer's visual speed estimate was not sufficient to provide probable cause, the court did not rule that all visual speed estimates were insufficient. The court stated:

> The reasonableness of an officer's visual estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate. …
>
> Such additional indicia of reliability need not require great exactions of time and mathematical skill that an officer may not have, but they do require some factual circumstance that supports a reasonable belief that a traffic violation has occurred. …

Id. at 592. Here, Officer Goettling testified that while driving at 45 mph, the posted speed limit, defendant Harrison was pulling away from him and, thus, speeding. (Fact No. 2) The Court finds that these facts provide the "indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate."

Defendant next argues that "crossing the center line or fog line does not automatically justify a traffic stop." (Motion to Suppress Evidence (doc #19) at 5) Three of the cases cited by defendant in support of this argument deal with vehicles which have crossed the fog line, that is the vehicles' passenger-side tires have crossed the line onto the shoulder of the road. See State v. Beck, 436 S.W.3d 566 (Mo. Ct. App. 2013); State v. Roark, 229 S.W.3d 216 (Mo. Ct. App. 2007); State v. Abeln, 136 S.W.3d 803 (Mo. Ct. App. 2004). The fog line, however, is not the line that is at issue in this case. In another case cited by defendant, the vehicle's driver-side tires ran onto, but not over, the line at the left shoulder of the road while traveling in the passing lane. See State v. Mendoza, 75 S.W.3d 842 (Mo. Ct. App. 2002). Again, not the line that is at issue in this case. Only one case cited by defendant involved the center line. See State v. Loyd, 326 S.W.3d 908 (Mo. Ct. App. 2010). In Loyd, the vehicle's tires touched, but did not cross, the white stripes

7

Case 4:18-cr-00103-BP   Document 33   Filed 09/06/18   Page 7 of 11

dividing the lanes.  Id. at 915.  The court stated:

> Here, prior to pulling him over, the officer admitted that Loyd was not "swerving;" "wasn't driving erratically;" "wasn't speeding;" "wasn't about to strike anything;" and "wasn't straddling two lanes."  All Loyd was doing, which is confirmed by the dash cam video, was driving his car with his tires touching the center line.  But this, alone, was an insufficient basis to provide the police probable cause to conduct a traffic stop. …

Id.  In contrast, Officer Goettling testified that defendant Harrison was speeding, that Harrison rapidly accelerated when the signal turned green causing the vehicle's tires to squeal, and that the vehicle's driver's side tires crossed over the double yellow painted lane dividers.  (Fact Nos. 2 and 3)  In addition, Officer Goettling testified that he believed, based on the pattern of driving, that the individual driving may have been either intoxicated or impaired.  (Fact No. 4)

Finally, defendant argues that even if he crossed the center line and was speeding, he did not violate the careless driving ordinance, which ordinance requires either that he had a mental state of recklessness or that he acted with criminal negligence.  (Motion to Suppress Evidence (doc #19) at 4-5)  On the citation for careless driving, Officer Goettling described the offenses as "careless driving by exceeding the posted speed limit, quickly accelerating causing the tires to squeal and the vehicle to then cross the double yellow painted line."  (Fact No. 10)  Regardless of whether defendant ultimately could be convicted under the careless driving ordinance, Officer Goettling observed defendant Harrison commit several traffic violations.  Thus, there was probable cause to stop Harrison.

B.   The Arrest

Defendant Harrison parked and got out of his vehicle.  (Fact No. 5)  Harrison did not obey Officer Goettling's command to get back into the vehicle.  (Fact No. 5)  Instead, Harrison walked away from his vehicle and away from Officer Goettling.  (Fact No. 5)  Officer Goettling

8

gave Harrison verbal commands to come back while Goettling walked towards Harrison. (Fact No. 5) Harrison was not compliant. (Fact No. 5) Officer Goettling grabbed Harrison's left arm in an escort manner to walk him back to his police vehicle. (Fact No. 6) Harrison was resistant and attempted to pull away from Officer Goettling. (Fact No. 6) Officer Goettling testified that he needed to take control of the situation for his own safety. (Fact No. 6) Officer Goettling testified that Harrison was detained at this point in time, but not under arrest. (Fact No. 6) Officer Goettling detected the odor of alcohol coming from Harrison. (Fact No. 6)

Ultimately, Harrison was arrested for careless driving and because he had a revoked driving status. (Fact No. 7) The United States Supreme Court has held "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Officer Goettling was justified in arresting defendant Harrison for the traffic violations he had observed, as well as for driving with a revoked license.

Further, the law is clear that an officer is "entitled to conduct an investigation reasonably related in scope to the circumstances that justified the interference in the first place." United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994), cert. denied, 514 U.S. 1113 (1995). A reasonable investigation for a traffic stop includes asking for a driver's license and registration and requesting that the driver sit in the patrol car so that the license can be checked. Id. at 915-16. Defendant Harrison resisted Officer Goettling's efforts to investigate the traffic violations. Thus, defendant could have been arrested for his conduct following the traffic stop. See Mo. Rev. Stat.

§ 575.150.[3]

### C. Fruit of the Poisonous Tree

Finally, defendant Harrison argues that because Officer Goettling did not have reasonable suspicion to detain him or probable cause to arrest him, all evidence and statements obtained as a result of the stop must be suppressed as fruit of the poisonous tree. (Motion to Suppress Evidence (doc #19) at 6) Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and verbal evidence obtained directly or indirectly through the exploitation of police illegality. See Wong Sun v. United States, 371 U.S. 471, 484-88 (1963). As set forth above, the Court finds that the stop of defendant and the arrest of defendant were lawful. Therefore, defendant's fruit of the poisonous tree argument must also fail.

### IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Harrison's Motion to Suppress Evidence (doc #19).

---

[3]Section 575.150 provides in part:

1. A person commits the offense of resisting or interfering with arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she:

    (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer ….

2. This section applies to:

    (1) Arrests, stops, or detentions, with or without warrants;
    (2) Arrests, stops, or detention, for any offense, infraction, or ordinance violation ….

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE
